MICHAEL B. HORROW (SBN 162917)
SCOTT E. CALVERT (SBN 210787)
DONAHUE & HORROW, LLP
1960 E. Grand Ave., Suite 1215
El Segundo, California 90245
Telephone: (310) 322-0300
Facsimile: (310) 322-0302
Email: mhorrow@donahuehorrow.com
Email: scalvert@donahuehorrow.com

Attorneys for Plaintiff
EDWARD MURPHY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| EDWARD MURPHY,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; ABBYY USA SOFTWARE HOUSE DISABILITY INCOME INSURANCE PLAN; DOES 1 THOUGH 10<br><br>　　　　　Defendants. | CASE NO.:<br><br>**COMPLAINT FOR BENEFITS UNDER A GROUP EMPLOYEE BENEFIT PLAN** |

– 1 –

COMPLAINT FOR BENEFITS UNDER A GROUP EMPLOYEE BENEFIT PLAN

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337 and 29 U.S.C. §1132(a), (e), (f) and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq*. ("ERISA") as it involves claims by Plaintiff for short-term disability benefits and long-term disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. §1331, as this action involves a federal question.

2. The events or omissions giving rise to Plaintiff's claims occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. §1391(b)(2), and the ends of justice so require.

3. The ERISA statute at 29 U.S.C. §1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted for all benefit claims.

4. Plaintiff EDWARD MURPHY ("Plaintiff" or "Mr. Murphy") is a resident of Orange County and citizen of the State of California, and at all relevant times was an employee of ABBYY USA Software House, Inc. ("ABBYY USA") and a participant in its employee benefit plan, identified below.

5. Plaintiff alleges upon information and belief that Defendant ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("Anthem") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of California, and is authorized to transact and is transacting the business of insurance in this state. Based on information and belief, Anthem is the Plan's Claims Administrator.

6. Plaintiff is informed and believes and thereon alleges that Defendant ABBYY USA SOFTWARE HOUSE DISABILITY INCOME INSURANCE PLAN ("Plan") is an employee welfare benefit plan established and maintained by ABBYY USA (and/or its related corporate entities) to provide employees with monthly short-

term disability ("STD") and long-term disability ("LTD") income insurance protection, and, is the Plan Administrator.

7. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and on such information and belief alleges that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

8. Anthem issued Group Policy Number 277639 to ABBYY USA and the eligible participants and beneficiaries of the Plan, including Mr. Murphy. That Policy and the Plan promised Mr. Murphy both STD and LTD benefits should certain criteria be met.

9. The Plan provisions governing Mr. Murphy's STD claim state that:
> Total Disability means that, as a result of Illness or Injury, You are not able to perform with reasonable continuity the Substantial and Material Acts necessary to pursue your Own Occupation in the usual or customary way.
>
> You will also be considered disabled if You meet the definition of Partial Disability, included below:
>
> Partial Disability means that, as a result of Illness or Injury, You are unable to earn more than 80% of Your Weekly Pre-disability Earnings in Your Own Occupation or that You are unable to perform with reasonable continuity some of the Substantial and Material Acts necessary to pursue Your Own Occupation in the usual or customary way.

10. The Plan provisions governing Mr. Murphy's LTD claim state that:

You will be considered disabled if You meet the definition of Total Disability or the definition of Partial Disability included below:

Total Disability means that:

- during the Elimination Period and for the first 24 months of disability benefits, as a result of Illness or Injury, You are not able to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Own Occupation in the usual or customary way; and
- following the first 24 months of disability benefits, as a result of Illness or Injury, You are not able to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity.

Partial Disability means that:

- during the Elimination Period and for the first 24 months of disability benefits, while working in Your Own Occupation, as a result of Illness or Injury, You are unable to earn more than 80% of Your Monthly Indexed Pre-disability Earnings.
- following the first 24 months of disability benefits, as a result of Illness or Injury, You are not able to perform with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity, or that You are unable to earn more than 60% of Your Monthly Indexed Pre-disability Earnings in any occupation.

11. For both STD and LTD claims, the Plan states that: "Own Occupation means any employment, business, trade, or profession that involves the Substantial and Material Acts of the occupation You were regularly performing for the employer when Your disability began. Own Occupation is not necessarily limited to the specific job You performed for the employer."

12. For both STD and LTD claims, the Plan states, in pertinent part, that: Substantial and Material Acts means the important tasks, functions, and operations generally required by employers from those engaged in Your Own Occupation that cannot be reasonably omitted or modified.

13. At the time of his disability, Mr. Murphy was working as an IT Professional Services/Project Manager for ABBYY USA. Mr. Murphy's job required computer programming and project management, among many other duties. The job also required some travel, when necessary.

14. On or about September 19, 2022, Mr. Murphy became "disabled," as defined by the Plan, and thus entitled to STD and, eventually, LTD benefits, due to restrictions and limitations related to his diagnosis of Charcot-Marie-Tooth disease ("CMT"), including, but not limited to overwhelming fatigue, profound weakness, crippling discomfort, numbness and lack of coordination.

15. CMT is a hereditary nerve disorder, caused by a genetic mutation, which causes the progressive loss of muscle and sensation in the peripheral nervous system. The symptoms of CMT can include foot deformities, weakness in the lower legs and loss of muscle in the hands and feet. Other symptoms include numbness, tingling, burning, or loss of temperature sensation in the hands and feet. CMT is a degenerative disease, for which there is no known cure or even any way slow the progression of the disease.

16. Mr. Murphy was first diagnosed with CMT in or about 2007, when he began experiencing issues with pain in his feet, face, neck and left arm. Despite these, and other, symptoms, Mr. Murphy was able to work with the condition for

about 15 years. Unfortunately, by 2022, the progression of the disease became too great, and he was forced to stop working.

17. After stopping working on or about September 19, 2022 due to his disability, Mr. Murphy attempted to return to work on or about October 19, 2022. While he still suffered from the effects of CMT – remember, CMT is a hereditary, degenerative nerve disorder that does not simply "go away" – Mr. Murphy, a hard working individual, returned to work, hopeful that he could continue working in a job that he enjoyed. Unfortunately, as of February 7, 2023, due to CMT, Mr. Murphy was no longer able to "perform with reasonable continuity the Substantial and Material Acts necessary to pursue [his] Own Occupation in the usual or customary way."

18. Based upon information and belief, Mr. Murphy timely filed a claim for STD benefits under the Plan.

19. In light of his diagnoses and related symptoms, restrictions and limitations, Mr. Murphy's treating medical professionals agreed that he was unable to perform the duties required of an IT Professional Services/Project Manager. Mr. Murphy's treating physicians informed Anthem of these opinions, and his overall condition, through claim forms and medical records.

20. For example, in an Attending Physician's Statement, dated July 18, 2023, C. Phillip O'Carroll, M.D., board certified in both neurology and psychiatry, stated that Mr. Murphy was disabled as of September 2022, due to CMT, neuropathic pain, chronic fatigue and related symptoms.

21. Despite the evidence supporting his STD claim, Anthem concluded that Mr. Murphy was not disabled and entitled to STD benefits claim under the Plan. Anthem's decision was primarily based on a determination that based on the Plan's "Actively at Work" provision and definition, and stating that Mr. Murphy's coverage under the Plan ended when his job was eliminated due to a "reduction in force" at ABBYY USA. Anthem informed Mr. Murphy of this decision by letter dated August

21, 2023, and explained that if he disagreed with the decision, he had the right to appeal the claim decision.

22. Mr. Murphy did disagree with Anthem's claim decision, and so timely appealed Anthem's decision to deny his claim for STD benefits.

23. Over the next few months, Mr. Murphy and Anthem exchanged a series of letters and emails, during which Mr. Murphy provided Anthem with further support for his claim, and Anthem continued to refuse to approve his STD claim.

24. As part of his appeal, Mr. Murphy provided Anthem with additional medical information in support of his claim. Among the supporting evidence, was a May 29, 2024 letter from Dr. O'Carroll, in which he stated:

> Throughout the years Ed has managed to be productive and remain in the workforce despite the very dramatic clinical issues that go along with Charcot-Marie-Tooth such as paresthesia's, numbness, pain, weakness, and intractable fatigue which often accompanies this disease. To make matters worse, he also developed the very painful disorder known as trigeminal neuropathy.
>
> I have watched the progression of this disease in Mr. Murphy over the last 12 years. I insisted that Ed try to reduce his time in the workforce since it was clear that he was struggling greatly. I have also of course marked the progression of this disease over the years to the point that he is having marked difficulty with balance, walking, and the fatigue which is also debilitating.

Referring to Mr. Murphy's CMT diagnosis, Dr. O'Carroll further explained that:

> This disease has left him with a variety of symptoms which would have disabled any other person years ago, but he has struggled through the fatigue, the weakness, the numbness, the lack of coordination until finally he could no longer perform adequately. There is no doubt in my

mind that he is totally disabled from all forms of work, and it is a cruel and unjust process that is depriving him of what he richly deserves.

25. Rather than asking Mr. Murphy to appear for an IME or FCE to assess his functional abilities, Anthem provided these medical records to physicians it paid, and asked them to conduct "paper reviews" of Mr. Murphy's medical records. That means Anthem's paid physicians never examined, or even spoke to Mr. Murphy regarding his diagnoses and related restrictions and limitations. Nor did they speak with Mr. Murphy's physicians in an attempt to understand the progression of CMT and its impact on Mr. Murphy's functionality. Then, despite only reviewing records created by physicians who were wholly supportive of Mr. Murphy's disability claim, Anthem's "paper review" physicians concluded that Mr. Murphy was not disabled and not entitled to disability benefits.

26. Despite the overwhelming evidence Mr. Murphy provided to Anthem in support of his disability claim and appeal of Anthem's erroneous and wrongful claim decision, on or about July 24, 2024, Anthem denied Mr. Murphy's appeal and affirmed the prior denial of his STD claim.

27. In the July 24, 2024 letter, Anthem confirmed that Mr. Murphy exhausted his administrative remedies, and had the right to bring an action under ERISA §502(a)(1)(B).

28. Despite Anthem's denial of his STD claim, Mr. Murphy remained disabled and unable to return to work. Thus, following the running of the LTD Plan's Elimination Period, he was entitled to LTD benefits.

29. While Mr. Murphy's STD claim was still being processed, he was informed by Anthem that the company would transition his STD claim to an LTD claim upon the competition of the Plan's Elimination Period. It failed to do so.

30. Based upon information and belief, Mr. Murphy timely filed a claim for LTD benefits under the Plan.

31. Mr. Murphy sent Anthem certified letters on or about July 8, 2024 and

July 30, 2024, informing Anthem that he was filing a claim for LTD benefits and providing additional information in support of that claim. The letters also included copies of LTD claim forms, including an Employer Statement, Employee Statement and Attending Physician's Statement completed by Dr. O'Carroll. In the Attending Physician's Statement, Dr. O'Carroll stated that Mr. Murphy was permanently disabled, as a result of CMT, which caused "severe limitation of functional capacity," which rendered him incapable of even minimum, sedentary capacity.

32. Based upon information and belief, Anthem received those letters on July 11, 2024 and July 30, 2024, respectively.

33. Mr. Murphy's LTD claim was assigned a claim number, LT00417362, and a case manager, Tanita Lee. However, despite this, Anthem refused to process Mr. Murphy's LTD claim or render a claim decision.

34. Mr. Murphy sent follow up letters to Anthem, dated August 14, 2024 and September 7, 2024, asking the company to confirm "that you either DENIED or APPROVED my LTD claim." However, in violation of its duties under the Plan and Policy as an ERISA Administrator, as well as those set forth in 29 CFR § 2560.503-1, Anthem failed to issue a decision on Mr. Murphy's LTD claim.

35. Mr. Murphy's LTD claim has accordingly been "deemed denied," due to Anthem's inaction and the company's failure to following ERISA's rules and requirements. Mr. Murphy has thus exhausted his administrative remedies with respect to the LTD claim and has the right to bring an action under ERISA §502(a)(1)(B).

36. As a direct and proximate result of Anthem's failure to provide Plaintiff with STD and LTD benefits, he has been deprived of said benefits from on or about February 14, 2024 to the present.

37. As a further direct and proximate result of the denial of his claims for STD and LTD benefits, Plaintiff has been required to incur attorneys' fees to pursue this action and is entitled to have such fees paid by Defendants pursuant to 29 U.S.C.

§ 1132(g) (1), ERISA § 502(g) (1).

38. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan's definition of disability, for both STD and LTD benefits, and thus he is entitled to past due STD and LTD disability benefits under the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of disability benefits from February 14, 2024 to the date of judgment;

2. For reasonable attorneys' and costs fees incurred in this action; and,

3. For such other and further relief as the Court deems just and proper.

DATED: October 21, 2024          DONAHUE & HORROW, LLP

MICHAEL B. HORROW
SCOTT E. CALVERT
*Attorneys for Plaintiff Edward Murphy*